# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **JOHNNIE EDWARDS BANKS, JR.,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 7:22CV00516 |
| ) | |
| **WARDEN, USP LEE,** ) | |
| ) | |
| Respondent. ) | |
| | |
| **JOHNNIE EDWARDS BANKS, JR.,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 7:23CV00007 |
| ) | |
| **WARDEN OF USP LEE,** ) | |
| ) | |
| Respondent. ) | |

## OPINION

*Johnnie Edwards Banks, Jr., Pro Se Petitioner; Justin Lugar, Assistant United States Attorney,* OFFICE OF THE UNITED STATES ATTORNEY, *Roanoke, Virginia, for Respondent.*

Johnnie Edwards Banks, Jr., a federal inmate proceeding pro se, filed these Petitions for a Writ of Habeas Corpus under 28 U.S.C. § 2241.[1]  He contends that prison officials have deprived him of sentence credit he has earned under the First

---

[1] Banks is currently confined at the United States Penitentiary Lee (USP Lee), located within this judicial district.

Step Act of 2018 (FSA). After review of the record, I conclude that the respondent is entitled to summary judgment in both cases.

I.

In August 2013, Banks pleaded guilty in this court to distributing cocaine. *United States v. Banks*, 3:13CR00003. United States District Judge Norman K. Moon found that Banks was appropriately designated a career offender because he possessed a firearm during drug transactions and created a substantial risk of death or serious bodily injury to others by fleeing from law enforcement in July 2012. On those findings, Judge Moon imposed an enhanced sentence of 188 months of imprisonment. Banks later moved for a sentence reduction under *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020), because under current law he no longer qualified as a career offender. Judge Moon granted Banks's motion and, on January 25, 2022, reduced his sentence from 188 months to 148 months in prison. *United States v. Banks*, No. 3:13-CR-00003, 2022 WL 220638 (W.D. Va. Jan. 25, 2022), *reconsideration denied*, 2023 WL 841805 (W.D. Va. Jan. 24, 2023), *aff'd*, No. 23-6070, 2023 WL 3074202 (4th Cir. Apr. 25, 2023) (unpublished).

After that sentence reduction, Banks filed pro se motions seeking further reduction in his sentence. Considering these motions, Judge Moon issued a Memorandum Opinion and Order finding that the sentencing factors in 18 U.S.C. § 3553(a) did not warrant a further reduction. The judge largely based this finding on

Banks' recent disciplinary record in prison and an assessment that Banks had a high risk of recidivism. *United States v. Banks*, No. 3:13-CR-00003, 2022 WL 12039432 (W.D. Va. Oct. 20, 2022), *aff'd*, No. 23-6070, 2023 WL 3074202 (4th Cir. Apr. 25, 2023) (unpublished).

In early August 2022, Banks signed and dated a § 2241 petition that he submitted to the United States District Court for the Western District of Oklahoma. In mid-August 2022, Banks signed and dated another § 2241 petition that he submitted directly to this court. *Banks v. Warden*, No. 7:22CV00516. In early 2023, the Oklahoma court transferred Banks's petition to this court where it was docketed as *Banks v. Warden*, No. 7:23CV00007. These petitions raise essentially the same claim — that under the FSA, Banks has earned more than 365 days of good time credits (known as FTCs), but prison officials have erroneously failed to apply any of these FTCs toward his sentence computation. Given the similarity of the petitions' claims, I will address them together.

In each of the two cases, the respondent has filed a Motion to Dismiss, or in the alternative, a Motion for Summary Judgment, asserting that Banks's § 2241 claim should be dismissed because he did not exhaust administrative remedies and because his claim of being denied FTCs lacks merit. In each case, the respondent attaches a declaration by Destiny Spearen, a paralegal who has access to and has reviewed records on Banks's incarceration in SENTRY, the BOP computer database

that tracks BOP inmates' status, activities, and administrative remedies. Case No. 7:22CV00516, Mem. Supp. Mot. Summ. J. Ex. 1, Spearen Decl., ECF No. 5-1. Attached documentation tracks BOP assessments of Banks's risk for reoffending after release. Banks responded to the motion. On June 29, 2023, at the direction of the court, the respondent submitted a declaration by Alisha Hall, Assistant Case Management Coordinator at USP Lee, providing updated information about Banks. Banks responded on July 10, 2023, in Case No. 7:22CV00516, making these matters ripe for disposition.

II.

The FSA provides inmates the opportunity to earn 10 to 15 days of good time credits for every 30 days of successful participation in Evidence Based Recidivism Reduction Programs (EBRR programs) and Productive Activities (PAs). 18 U.S.C. § 3632(d)(4)(A). The earned credits, referred to as FTCs, can be applied toward earlier placement in prerelease custody, such as Residential Reentry Centers and home confinement, or to reduce a term of supervised release. 18 U.S.C. § 3632(d)(4)(C).

Banks argues that under FSA requirements, earned FTCs must be applied if they equal the remainder of an inmate's sentence, as Banks claims is true for him. The FSA provides:

> Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities

> *shall be applied toward time in prerelease custody or supervised release.* The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C) (emphasis added). Banks's argument ignores the second sentence of the provision that references the statute's requirements for inmate eligibility to *receive* the benefit of FTCs he has earned. Banks has not satisfied a critical factor of such eligibility under § 3624(g), because he is currently assessed as having a high risk of recidivism.

The FSA mandated the development and implementation of an assessment system for people in federal custody to gauge and reduce the risk of recidivism. The Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) was the result. Among other things, the PATTERN system is designed to: (1) determine an inmate's recidivism risk; (2) assess his risk of violent or serious misconduct; (3) determine the type and amount of EBRR programming and PAs are appropriate to reduce his risk of reoffending; (4) regularly assess his recidivism risk and programming needs; and (5) determine when he is ready to transfer to prerelease custody or supervised release. 18 U.S.C. § 3632(a). Each inmate's PATTERN score is periodically determined by assigning point values to factors such as current age; severity of the current offense; sex offender status; prison rule infractions or incidents, including seriousness and timing; participation in drug treatment, work, and education programming; history of violence; and history of escape. 18 U.S.C.

§ 3632(a); Fed. Bureau of Prisons, *PATTERN Risk Assessment,* Male PATTERN Tool.[2] Based on an inmate's PATTERN score, he is classified as a minimum, low, medium, or high recidivism risk.

Under the FSA and related regulations, inmates with any PATTERN score may *earn* FTCs, but only those inmates with low and minimum PATTERN scores can have the FTCs *applied* to their terms of confinement. 28 C.F.R. § 523.42 (explaining how inmates earn FTCs); 28 C.F.R. § 523.44 (limiting application of FTCs to eligible inmates who also have "demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment"). Thus, inmates with PATTERN scores of medium or high risk of recidivism, like Banks, can earn FTCs, but they are ineligible to have the FTCs applied to reduce custody or supervised release. *Holmes v. Sage*, No. 1:22-CV-923, 2022 WL 2791755 (M.D. Pa. July 15, 2022) (denying habeas relief under 28 U.S.C. § 2241 because inmate had a medium risk of recidivism).

The FSA requires BOP officials to "reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison." 18 U.S.C. § 3632(a)(4). These reassessments are required at least annually under the FSA for inmates participating in EBRR programs or PAs, with more

---

[2] Available at: https://www.bop.gov/inmates/fsa/pattern.jsp.

frequent risk reassessments for inmates classified as medium or high risk of reoffending who are also nearing their projected release dates. In practice, inmates' PATTERN scores are reassessed at Program Review meetings that occur approximately every six months. Inmates with less than one year remaining to serve are to be reassessed every three months.

The respondent's evidence indicates that Banks's recidivism risk was reassessed at his Program Review meetings on February 3, 2022, August 10, 2022, and January 30, 2023. After each of these assessments, reviewers assigned Banks a high-risk recidivism level. Banks does not dispute this evidence. Because of these PATTERN scores, Banks is ineligible to apply any FTCs he has earned toward reducing his prerelease custody or his upcoming supervised release. The evidence also indicates that Banks has been reassessed on a schedule in accordance with the FSA. His FSA credits will be calculated and applied if he meets the requirements for application prior to his current projected release date, which is currently May 6, 2024.

Banks contends that the court should grant relief based on the history of the FSA and his conclusory assertions that the PATTERN assessment tool is unfair and racially discriminatory. These factually unsupported statements of unfairness and discrimination are not sufficient to create any material dispute of fact precluding summary judgment on his § 2241 claims. *Richardson v. Clarke*, 52 F.4th 614, 620

(4th Cir. 2022) (holding that conclusory allegations or denials, without more, are insufficient to preclude summary judgment) (internal quotation marks and citation omitted). Banks also asks the court to grant relief based on his personal efforts to improve his recidivism score. He states that he has complied with his individualized needs plan by completing classes in parenting and basic computers and that he has never refused any programming offered to him. As relief, he seeks immediate placement on supervised release.[3] While I commend Banks for his efforts at rehabilitation, I find no authority under the FSA or related regulations on which such efforts alone warrant habeas relief under § 2241.

Given the undisputed evidence that Banks has been, and is currently, assessed as having a high-risk recidivism level, I conclude that he is ineligible under the clear terms of the FSA for immediate application of his earned FTCs toward his sentence computation. Therefore, I also conclude that his § 2241 petitions seeking such relief are without merit.[4]

---

[3] In addition, Banks seeks money damages. Monetary relief is not available in this habeas proceeding.

[4] In the alternative, the respondent moves for dismissal of the § 2241 petitions because Banks failed to exhaust administrative remedies before filing them. The BOP administrative remedy program includes multiple stage of review, and the SENTRY system keeps track of remedies each inmate has filed, responses received, and appeals taken. According to the respondent's evidence, SENTRY has no record that Banks has properly filed and had recorded any administrative remedy form during his term of incarceration at USP Lee claiming that he is wrongfully assigned to the high-risk recidivism level.

III.

For the stated reasons, I will grant summary judgment to the respondent and dismiss the § 2241 petitions with prejudice.

Judgments in both cases will be entered herewith.

DATED: August 25, 2023

/s/  JAMES P. JONES
Senior United States District Judge

---

Banks responds to the exhaustion argument by asserting that he has attempted to utilize his administrative remedies.  But he claims that he has been forced to agree to withdraw his complaints. Resp. 4, ECF 10.  Because I find that the claims raised in the § 2241 petitions are without merit, I will dismiss the petitions on that basis rather than wading into factual disputes concerning the exhaustion issue.